UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Troy Castillo,             ) | |
|                            ) | |
|     Plaintiff,    ) | Case No.: 2:14-cv-0332-GMN-PAL |
| vs.                        ) | |
|                            ) | ORDER |
| Kevin Ingram; *et al.*,    ) | |
|                            ) | |
|     Defendants.   ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 43), filed by Defendants Kevin Ingram, David Spencer, Mark Zane, James Nadeau, James Colbert, and Robert Uithoven.  Plaintiff Troy Castillo filed a Response, (ECF No. 48), to which Defendants replied, (ECF No. 50).

## I.     BACKGROUND

This case centers upon constitutional challenges to several provisions of Nevada's licensing scheme for private investigators. (Am. Compl., ECF No. 29).  Plaintiff Troy Castillo is a resident of California and a twenty-nine year veteran of the Palm Springs Police Department who wishes to work as a private investigator in Nevada. (*Id.* at 2:6-9, 5:12-13). Plaintiff was issued a Nevada private investigator's license in 2012, which was held in abeyance until his retirement as a police officer in 2013. (*Id.* at 5:20-22).  However, due to Plaintiff's concerns regarding the statutory provisions at issue in this case, he has ceased his business operations in Nevada. (*Id.* at 6:1-5).  Plaintiff currently works as a private investigator in California, and does not maintain a business office or own a residence in Nevada. (*Id.* at 2:10-13).

Plaintiff challenges two provisions of Nevada law which set forth requirements

pertaining to private investigators in Nevada. The first of these is Nev. Rev. Stat. § 648.148, which requires that licensees "[m]aintain a principal place of business in [Nevada]." Plaintiff argues that this provision discriminates against out-of-state private investigators by requiring that they incur the substantial cost of maintaining a business office in Nevada, while allowing in-state private investigators to avoid this cost by designating their residence as their principal place of business. (Am. Compl. 10:1-4). Based on this alleged competitive advantage to in-state residents, Plaintiff argues that Nev. Rev. Stat. § 648.148 violates the Commerce Clause, the Privileges and Immunities Clause of Article IV, and the Due Process Clause of the Fourteenth Amendment. (*Id.* at 9:13-19).

Additionally, Plaintiff challenges Nev. Rev. Stat. § 648.060, which provides that individuals may not work as private investigators in Nevada unless they are licensed by the state. Plaintiff claims that the requirement that he obtain a license infringes his rights under the Free Speech Clause and is unrelated to public health, safety, or welfare. (Am. Compl. 12:1-10). Plaintiff also asserts that the statute's definition of a "private investigator" is facially overbroad, which infringes his rights under the Free Speech Clause. (*Id.* at 12:21-24).

On February 5, 2015, the Court dismissed Plaintiff's original Complaint, (ECF No. 1), finding that Plaintiff lacked standing to assert his claims because the Complaint did not show that Plaintiff had a concrete plan to violate any of the challenged provisions or that there had been any history of prosecution or enforcement of these provisions against similarly situated individuals. (Order, ECF No. 28). In that same Order, the Court granted leave for Plaintiff to file an amended complaint to cure the deficiencies in the original Complaint. (*Id.* at 7:12-14).

In the instant Motion, Defendants again assert that Plaintiff lacks standing to raise the constitutional challenges at the center of this case. Accordingly, Defendants request that the Court dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

/ / /

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

In resolving a factual challenge, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). Additionally a court need not presume that the allegations in the plaintiff's complaint are true. *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003).

If a court finds that dismissal is warranted, it should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

1  'Controversies.' " *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting
2  U.S. Const., art. III, § 2).  Standing is a core component of the Article III case or controversy
3  requirement and focuses on whether the action was initiated by the proper plaintiff. *See, e.g.*,
4  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732-33 (2008).  "To establish Article III
5  standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection
6  between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will
7  be redressed by a favorable decision.' " *Driehaus*, 134 S. Ct. at 2341 (quoting *Lujan v.*
8  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

9      Additionally, "The ripeness doctrine seeks to identify those matters that are premature
10 for judicial review because the injury at issue is speculative, or may never occur."
11 *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014).  "For adjudication
12 of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are
13 requisite." *Id.* at 838.  It is widely recognized that "the constitutional component [of the
14 ripeness doctrine] overlaps with, and is often indistinguishable from, the 'injury in fact prong'
15 of [the court's] standing analysis." *Id.* at 839.

16     In this case, Defendants' arguments relating to standing and ripeness ultimately turn
17 upon the same issue—whether the Court may consider Plaintiff's constitutional challenges
18 despite the fact that no disciplinary action has been initiated against him.  When determining if
19 there is a sufficient injury in fact (or sufficient ripeness) for a plaintiff to raise a pre-
20 enforcement challenge, the Court considers: (1) "whether the plaintiff articulates a concrete
21 plan to violate the law"; (2) "whether the government has communicated a specific warning or
22 threat to initiate proceedings under the statute"; and (3) "the history of past prosecution or
23 enforcement under the statute." *Id.* (internal quotations omitted).  The Court will address each
24 of these considerations in turn.
25 / / /

### A. Concrete Plan to Violate the Law

In asserting a concrete plan to violate a challenged statute, it is not sufficient for a plaintiff to express "a general intent to violate [the] statute at some unknown date in the future." *Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010). Instead, "the plaintiff must establish a plan that is more than hypothetical." *Id.* (internal quotations omitted).

In this case, Plaintiff has failed to allege a concrete plan to violate Nev. Rev. Stat. § 648.148. Quite the contrary, the Amended Complaint states that Plaintiff has refused "over 20 offers for employment as a private investigator" due to his concerns that he might violate this provision by failing to maintain a place of business in Nevada. (Am. Compl. 6:8-14). Falling well short of establishing a concrete plan to violate Nev. Rev. Stat. § 648.148, the allegations in the Amended Complaint actually indicate that Plaintiff has gone to great lengths to *avoid* any potential violation. Therefore Plaintiff has failed to allege even a hypothetical plan to violate Nev. Rev. Stat. § 648.148.

Similarly, Plaintiff has failed to set forth a concrete plan to violate Nev. Rev. Stat. § 648.060. Plaintiff makes clear that, despite his wishes, he does not actually intend to work as a private investigator in Nevada while the challenged provisions are in place. Furthermore, even if he began such work in the near future, the Amended Complaint does not allege that Plaintiff lacks a Nevada private investigator's license. Indeed, the allegations in the Amended Complaint indicate that Plaintiff was issued a license in 2012, (Am. Compl 5:20-22), and there is no indication that his license has expired or been invalidated. Therefore, as the Amended Complaint implies that Plaintiff is properly licensed in Nevada, he has failed to establish a concrete plan to work as a private investigator without a license.

### B. Specific Warning or Threat to Initiate Proceedings

Plaintiff has also failed to sufficiently show that there has been a specific threat to enforce Nev. Rev. Stat. § 648.148 against him. In support of his claims, Plaintiff refers to an

1  email sent on January 21, 2015, in which a member of Defendants' staff notified Plaintiff "that
2  his mandatory certificate of liability insurance was deficient because it listed his principal place
3  of business as California, instead of Nevada . . . ." (Am. Compl. 7:10-13); (January 21, 2015,
4  Emails, Attachment II to Defs.' Resp. to Pl.'s Mot. for Prelim. Injunction, ECF No. 36-5).
5  Attached to this email was a copy of the February 2014 issue of the Nevada Private
6  Investigator's Licensing Board Newsletter, which stated that all private investigator licensees
7  must "maintain a principal place of business in Nevada; as well as have a representative
8  (qualified agent) for the corporation present within the state to supervise employees." (PILB
9  Newsletter at 1, ECF No. 29-1).

10  However, less than seven hours after the email at issue was sent, the same member of
11  Defendants' staff sent Plaintiff an additional email which stated, "My apologies.  Our Records
12  show that your PILB license does not have any current employees, so we do not require a
13  Nevada address on your certificate of insurance.  I will update the insurance information with
14  the information you provided in this email." (January 21, 2015, Emails, Attachment II to Defs.'
15  Resp. to Pl.'s Mot. for Prelim. Injunction).

16  Therefore, while the initial January 21 email may have raised concerns that Plaintiff was
17  in violation of Nev. Rev. Stat. § 648.148, the subsequent email makes clear that Defendants do
18  not intend to take disciplinary action against Plaintiff, nor do they even expect Plaintiff to
19  comply with the provision.  Accordingly, the Court finds that Plaintiff has failed to show that
20  Defendants have communicated a specific warning or threat to initiate proceedings under Nev.
21  Rev. Stat. § 648.148.

22  A more lenient standard applies under this prong to Plaintiff's challenges against Nev.
23  Rev. Stat. § 648.060.  In pre-enforcement actions alleging a violation of an individual's First
24  Amendment right to free speech, a plaintiff "need only demonstrate that a threat of potential
25  enforcement will cause him to self-censor, and not follow through with his concrete plan to

engage in protected conduct." *Bowen*, 752 F.3d at 839. However, the Court does not reach the question as to whether Plaintiff has satisfied this standard, as he has failed to satisfy the other prongs of the injury-in-fact inquiry.

### C. History of Prosecution or Enforcement

Plaintiff has failed to establish any history of prosecution or enforcement under Nev. Rev. Stat. § 648.148. Plaintiff points to no past instances in which proceedings were raised against a private investigator in Nevada for failing to maintain a place of business. As to his challenge against Nev. Rev. Stat. § 648.060, Plaintiff fails to cite to any cases in which an action was raised pursuant to this provision against an individual who possessed a valid license. The absence of any such precedent is unsurprising, as it would be quite perplexing to find a prior case in which Defendants successfully prosecuted a properly licensed private investigator for failing to properly obtain a private investigator's license.

Nevertheless, Plaintiff asserts that he need not show that Nev. Rev. Stat. § 648.060 has been enforced against properly licensed individuals, because the Nevada statutory scheme requires that he renew his license annually. Plaintiff argues that because he will be forced to renew his license at the end of the year, he is similarly situated to individuals who have never been issued a private investigator's license. However, the fact that Plaintiff will, *in the future*, be forced to choose between renewing his license or losing the ability to practice private investigation in Nevada does not render him similar to individuals who *presently* are not authorized to work as private investigators. By its own terms, Nev. Rev. Stat. § 648.060 makes clear that Plaintiff is authorized by the state of Nevada to "engage in the business of private investigator," and therefore Plaintiff is not subject to the limitations that he seeks to challenge with his claim.

Citing *Sands North, Inc. v. City of Anchorage*, 537 F. Supp. 2d 1032 (D. Alaska 2007), and *Score LLC v. City of Shoreline*, 319 F. Supp. 2d 1224 (W.D. Wash. 2004), Plaintiff argues

that merely being subject to a future renewal is sufficient to establish standing to challenge the validity of a licensing requirement. However, Plaintiff's reliance on these decisions is misplaced. *Sands North* addressed a challenge to a statute which allegedly granted a licensing authority overbroad discretion to "revoke" or "suspend" licenses that had previously been issued. 537 F. Supp. 2d at 1036-37. In *Score LLC*, a license holder challenged the constitutionality of a provision governing the *renewal* of its license. 319 F. Supp. 2d 1224 at 1230.

In this case, rather than challenging provisions, such as those regarding revocation or renewal, that place an ongoing burden upon license holders, Plaintiff seeks to challenge a provision requiring that individuals obtain a license in the first instance. However, because Plaintiff has already been issued a license, the requirements of Nev. Rev. Stat. § 648.060 bear no relation to his authority to engage in the business of private investigation now or at any definite time in the future. Therefore the Court finds that *Sands North* and *Score LLC* are inapposite to the instant case, and that Plaintiff has failed to demonstrate that Nev. Rev. Stat. § 648.060 has ever been enforced against individuals to whom he is similarly situated.

Thus, Plaintiff has failed to establish a concrete plan to violate the challenged provisions or show that there is a history of these provisions being enforced against similarly situated individuals. Furthermore, Plaintiff has failed to demonstrate that there has been a specific threat or warning that Defendants will initiate proceedings against him for violating Nev. Rev. Stat. § 648.148. Therefore, Plaintiff lacks standing to raise the instant action, and the Court will grant the Defendants' Motion to Dismiss. Because Plaintiff has failed to cure the deficiencies identified herein through amendment, the Court will dismiss Plaintiff's claims with prejudice.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 43), is

1 **GRANTED**.

2 **IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 30), and Defendants' Motion for an Order to Show Cause, (ECF No. 40), are **DENIED as moot.**

**IT IS FURTHER ORDERED** that the Amended Complaint, (ECF No. 29), is **DISMISSED with prejudice**.  The Clerk shall enter judgment accordingly.

**DATED** this 5th day of June, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court